No. 26-698

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

GREGORY ALLEN,

Plaintiff-Appellant,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.*,

Defendants-Appellees,

---

On Appeal from the United States District Court
For the Western District of Washington
Case No.: 3:23-cv-05746-BHS

---

## ANSWERING BRIEF OF APPELLEES

---

Michael J. Throgmorton, WSBA # 44263
Law Lyman Daniel Kamerrer & Bogdanovich, P.S.
2674 RW Johnson Rd., Tumwater, WA 98512
P.O. Box 11880 Olympia, WA 98508
Phone: (360) 754-3480
Fax: (360) 357-3511
Email: mthrogmorton@lldkb.com
Counsel for Defendants-Appellees

---

June 15, 2026

**TABLE OF CONTENTS**

I    INTRODUCTION……………………………………………...……1

II.    JURISDICTIONAL STATEMENT………….…….………………...2

III.    ISSUES PRESENTED………………………….…..………….…..…2

IV.    STATEMENT OF THE CASE……………….……………………..2

    A.    Factual Background………………….……………………..2

        1.    After Over a Decade of Living in Dual-Occupancy Cells, Allen Began Refusing Anything Other than a Single-Occupancy Cell……………………………………………3

        2.    DOC Considered and Denied Allen's Demands for a Single-Occupancy Cell in General Population…………………...4

        3.    Allen's Medical Provider Restricted His Use of a Wheelchair to Long Distances Only…………………………6

    B.    Procedural History …………………………………………8

        1.    The District Court Granted Summary Judgment to DOC on Allen's ADA Claims ………………………………….9

        2.    The District Court Also Granted Summary Judgment to DOC and to Sergeant Kaehler on Allen's § 1983 Claims…10

V.    STANDARD OF REVIEW…………………………………………10

VI.    SUMMARY OF ARGUMENT…………………………….…………11

VII.    ARGUMENT…………………………………………………..………12

    A.    The District Court Properly Dismissed Allen's Damages Claims Under the ADA Because He Failed to Present Sufficient Evidence of Discriminatory Intent………………………………………...12

        1.    Allen Failed to Demonstrate Intentional Discrimination in the Denial of His Demand for a Single-Occupancy Cell …14

i

**2.      Allen Failed to Establish Intentional Discrimination in His Medical Provider's Decision to Restrict His Use of a Wheelchair to Long Distances Only.………………………21**

**B.      By Failing to Assign Error to or Present Any Argument Related to the Dismissal of His Eighth Amendment Claim, Allen Has Abandoned Any Claim Under § 1983 on Appeal………………...24**

**VIII.  CONCLUSION……………………………………………….……...25**

# TABLE OF AUTHORITIES

**Cases**

*Alvarez v. Hill*, 667 F.3d 1061 (9th Cir. 2012) ........................................................13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................11

*Armstrong v. Brown*, 732 F.3d 955 (9th Cir. 2013) ................................................17

*Balla v. Idaho*, 29 F.4th 1019 (9th Cir. 2022) .......................................................23

*Barker v. Osemwingie*, Nos. 20-15503, 20-15840, 2021 WL 5564625 (9th Cir. 2021) .........................................................................................................17

*Barnes v. Gorman*, 536 U.S. 181 (2002) ...............................................................13

*Brown v. Rawson-Neal Psych. Hosp.*, 840 F.3d 1146 (9th Cir. 2016) ....................25

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) ....................................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................10

*City of Canton v. Harris*, 489 U.S. 378 (1988) .......................................................14

*Coleman v. Virga*, No. 2:17-cv-0851, 2019 WL 2866724 (E.D. Cal. 2019) ...........16

*Coley v. Gonzales*, 55 F.3d 1385 (9th Cir. 1995) ...................................................25

*Csutoras v. Paradise High Sch.*, 12 F.4th 960 (9th Cir. 2021) ...............................23

*Dilley v. Gunn*, 64 F.3d 1365 (9th Cir. 1995) ........................................................13

*Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962 (N.D. Cal. 1998) ..............14

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) .............................. passim

*Ferguson v. City of Phoenix*, 157 F.3d 668 (9th Cir. 1998) ........................... 13, 15

*Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154 (2017) ....................................................13

*Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991)....................................................20

*Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996)....................................................23

*Kiman v. New Hampshire Dept. of Corr.*, 451 F.3d 274 (1st Cir. 2006) ......... 22, 23

*Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416 (9th Cir. 1989) .............................10

*Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002) ...................................................15

*Martinez v. Cnty. of Alameda*, 512 F.Supp.3d 978 (N.D. Cal. 2021).......................11

*Martinez-Serrano v. I.N.S.*, 94 F.3d 1256 (9th Cir.1996)..........................................25

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)......11

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) ...................................14

*Meachum v. Fano*, 427 U.S. 215 (1976)....................................................................16

*Morris v. California*, No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) ........ 17, 18

*Muñoz v. Calif. Dept. of Corr.*, 842 F. Appx. 59 (9th Cir. 2021)..................... 16, 17

*Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963 (9th Cir. 2006).......................24

*Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010)................. 12, 16, 20, 22

*Teters v. Wash. State*, No. 3:18-cv-05481, 2019 WL 1959866 (W.D. Wash. 2019)

..................................................................................................... 16, 19, 20

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004)....................................................23

*Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338 (9th Cir. 1989)....................10

*United States v. Florida*, 938 F.3d 1221 (11th Cir. 2019)........................................13

*Updike v. City of Gresham*, 62 F.Supp.3d 1205 (D. Or. 2014) ...............................24

*Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002)...................................................25

**Statutes**

28 U.S.C. § 1291 ........................................................................................................2

42 U.S.C. § 1983 .....................................................................................................1, 2

RCW 9.94A.570...........................................................................................................2

**Rules**

Fed. R. Civ. P. 56 ......................................................................................................10

## I.     INTRODUCTION

This Court should affirm the summary judgment entered in favor of the Washington Department of Corrections (DOC) and Sergeant Jason Kaehler on Plaintiff Gregory Allen's claims under Title II of the Americans with Disabilities Act (ADA) and 42 U.S.C. § 1983. Allen, a former inmate who was released from custody in the course of the proceedings below, alleged disability discrimination and violation of his Eighth Amendment rights related to DOC's denial of his prior request for a single-occupancy cell and the limits imposed on his wheelchair use by his medical provider following a change in his Health Status Report. After Allen's release rendered any claim for injunctive relief moot, the district court dismissed his claim for damages under the ADA because he failed to offer any evidence that DOC intentionally discriminated against him on the basis of disability. The district court also dismissed Allen's § 1983 claims because he failed to establish deliberate indifference on the part of Sergeant Kaehler and, even if he had, Sergeant Kaehler was entitled to qualified immunity.

On appeal, Allen abandons his § 1983 claim and challenges only the dismissal of his claims under Title II of the ADA. Because the district court correctly determined that Allen failed to offer any evidence creating an issue of fact as to discriminatory intent, it properly granted summary judgment to DOC on that claim. This Court should therefore affirm.

1

## II.    JURISDICTIONAL STATEMENT

This Court has jurisdiction over Allen's appeal from a final order of the district court pursuant to 28 U.S.C. § 1291.

## III.    ISSUES PRESENTED

1.    Did the district court properly grant summary judgment to DOC dismissing Allen's claims for damages under Title II of the ADA where he failed to offer any evidence of intentional discrimination?

2.    Absent any assignment of error or argument regarding the claims he brought under 42 U.S.C. § 1983, has Allen abandoned those claims on appeal?

## IV.    STATEMENT OF THE CASE

### A.    Factual Background

In 2000, Allen was sentenced to twenty years in prison after receiving a "third strike" under Washington's Offender Accountability Act, RCW 9.94A.570.[1] ER-42. Though he subsequently received supervised release, Allen violated his supervision, committed new crimes, and was returned to prison. ER-42. Between 2000 and 2023, Allen also accumulated 130 serious disciplinary infractions and was moved between prisons more than 500 times in an effort to find the best way to manage him. ER-43. For the first ten years of his sentence, however, Allen lived in dual-occupancy cells.

---

[1] Allen's crimes included intimidating a judge, assaulting prison staff, theft, resisting arrest, and eluding police, amongst others. ER-45, ER-110-11.

### 1. After Over a Decade of Living in Dual-Occupancy Cells, Allen Began Refusing Anything Other than a Single-Occupancy Cell

While at Coyote Ridge Corrections Center (CRCC) in 2010, Allen began refusing to occupy a cell with any other inmate and demanded a single-occupancy cell in the prison's general population. ER-45. Single-occupancy cell requests are reviewed by DOC's Single Cell Committee, which consists of a multidisciplinary panel of custody staff, medical and mental health providers, and ADA coordinators who consider such requests and make non-binding recommendations. ER-70-73. Those recommendations are forwarded to headquarters, where a final determination is made by the Senior Director for Comprehensive Case Management. ER-74.

Allen's mental health treatment providers opined that there was no basis for him to receive a single-occupancy cell.[2] ER-45. As a result – and because CRCC does not have any single-occupancy cells in its general population – Allen's request for a single-occupancy cell in the prison's general population was denied. ER-45. Because he persisted in his refusal to occupy anything other than a single cell, Allen received several infractions and was assigned to the Intensive Management Unit (IMU), where he had a single cell but was on 23-hour-per-day lockdown. ER-45-46.

---

[2] The screening criteria for single-occupancy cell assignment is whether the inmate has murdered, raped, or committed an aggravated assault against a cellmate in the past. ER-79. It is undisputed that Allen had never committed any of those crimes. ER-79.

The IMU does not allow inmates the same privileges as those in general population, such as radio or television access. SER-6. Allen also disliked the conclusions other inmates drew about him while he was in the IMU. SER-6. The following year, Allen claimed for the first time, without corroborating evidence,[3] that he had been raped in 2009, suffered from Post-Traumatic Stress Disorder (PTSD), and required a single-occupancy cell, which he demanded be in general population. ER-46-47. Since CRCC has no single-occupancy cells in general population, Allen remained in the IMU until his transfer to the Washington State Penitentiary. ER-45-46.

### 2. DOC Considered and Denied Allen's Demands for a Single-Occupancy Cell in General Population

Following a later move to Stafford Creek Corrections Center (SCCC), in November 2011, Allen sought a transfer to the Monroe Correctional Complex's Twin Rivers Unit as an accommodation under the ADA. ER-47. After consulting the ADA coordinator at SCCC, DOC denied his request, finding Allen did not qualify due to a lack of supporting documentation. ER-47. In January 2012, DOC notified Allen that he would have sixty days to find a suitable cellmate. ER-48. Allen responded by continuing to refuse anything other than a single-occupancy cell in the

---

[3] The only support for Allen's claim that he was raped in 2009 is his own declaration. ER-120-21. The Order Granting Summary Judgment thus notes only that Allen *claimed* to have been raped. ER-157-58.

general population and threatening to kill anyone with whom he was housed. ER-48. Allen received another infraction for this threat and was again assigned to the IMU. ER-48.

Between 2010 and 2020, Allen repeatedly demanded a single-occupancy cell to accommodate alleged mental health conditions. ER-48-59. Each time, his requests were considered and denied by custody classification staff, facility superintendents, medical staff, mental health treatment providers, multidisciplinary teams, and ADA coordinators. ER-48-59. Nevertheless, DOC consistently accommodated Allen by 1) placing him in a single-occupancy cell in the IMU, and 2) providing him with lengthy advance notice of reassignment and an opportunity to find a suitable cellmate. *See, e.g.*, ER-49 (giving Allen a single cell assignment for sixty days in order to find a suitable cellmate); ER-57 (noting that Allen demanded six months to find a suitable cellmate after being given ninety days advance notice). When he did find a cellmate he liked, Allen successfully lived in a dual-occupancy cell from 2015 to 2016 without incident and obtained minimum custody status. ER-52-53. After his cellmate left, however, Allen again had difficulty identifying a suitable cellmate and began acting out, getting into fights, and returning to his prior refusals to occupy a dual-occupancy cell, again citing purported "mental health conditions." ER-53.

Finally, in August 2020, Allen's mental health providers, Dr. Richard Baez and Psychology Associate Luke Waggoner, opined that assigning Allen to a single

5

cell would be "beneficial" to him.[4] ER-77-78. Allen's medical providers, Dr. Smith and Physician's Assistant (PA) Jennifer Meyers, however, noted that "medically, Mr. Allen does not meet the criteria for a single cell house." ER-77. After considering all perspectives and taking into consideration the fact that Allen's release date was approaching, the single-cell committee ultimately recommended a single-occupancy cell. ER-77-78. The recommendation was again considered by DOC headquarters and denied. ER-79-80. In response, Allen again refused to occupy any cell except a single-occupancy cell in general population. ER-58. As a result, he was infracted and remained in the IMU until his release from custody in February 2023. ER-58, ER-112-13.

### 3. Allen's Medical Provider Restricted His Use of a Wheelchair to Long Distances Only

Allen also clashed with DOC over his medical restrictions. In August 2020, Allen's medical provider, PA Jennifer Meyers, provided him with a Health Services Report (HSR)[5] restricting his standing time to 10 minutes and authorizing him to possess compression stockings and a wheelchair. ER-95. On December 30, 2020, however, Meyers changed Allen's HSR by removing all physical restrictions and

---

[4] Neither Dr. Baez nor Mr. Waggoner opined that Allen *required* a single cell living environment as an accommodation under the ADA, nor did either specify that Allen required such a cell in the general population as Allen demanded. ER-77.

[5] A Health Services Report is "a modality that medical [staff] uses with custody to help communicate a [need] for durable medical [equipment]." ER-83.

limiting his use of a wheelchair to long distances only. ER-97. Consistent with DOC policy permitting equipment prescribed under HSRs to be modified only by medical personnel, Meyers testified she exercised her own independent medical judgment in making these changes. ER-85-89. Meyers noted HSRs change often, saying "nothing on these HSRs are solidified. It's not a permanent decision by any means . . . [w]e're changing the medical equipment all the time." ER-86, ER-92.

When the revised HSR was delivered to Allen by Sergeant Kaehler, Allen became enraged and screamed threats to harm him. ER-136. Later, Allen alleged that, after seeing him walking a short distance in his cell, Sergeant Kaehler "ran to PA Meyers and 'directed' her to change his medical equipment needs, then walked back into his cell laughing as he threw the revised list of equipment at him and exited with his leg brace and wheelchair." ER-161. Allen ultimately conceded this was speculation, however, since he was not present for any alleged conversation between Sergeant Kaehler and PA Meyers because he remained locked in his cell. ER-114-15. Allen's cell was in a different unit of the prison from PA Meyers' office. ER-91.

PA Meyers admitted that medical providers rely on their observations and on the observations of custody officers in determining what medical restrictions to impose. ER-85. Nevertheless, neither PA Meyers nor Sergeant Kaehler could recall ever having spoken to each other about Allen or his HSR. ER-90, ER 100-01.

In June 2021, at the request of Allen and his medical provider, DOC Medical Director Dr. MaryAnn Curl met with Allen, discussed his concerns, and issued him a new HSR approving new accommodations for housing (no stairs or top bunk), work (lifting and standing restrictions) and medical equipment (compression stockings, crutches, leg braces, shower chair, and unlimited use of a wheelchair). ER-162. This HSR remained in place until Allen was released from prison in February 2023.

**B.      Procedural History**

Allen sued DOC, alleging it violated Title II of the ADA by failing to accommodate his demands for a single-occupancy cell in the prison's general population and by denying him unlimited access to a wheelchair during his time in the IMU. ER-157-58. Allen also brought claims under § 1983, alleging DOC's failure to provide him a single-occupancy cell and Sergeant Kaehler's removal of his wheelchair were deliberately indifferent and thus violated his rights under the Eighth Amendment. ER-157-58. Because he was released from custody during the pendency of his action, Allen disclaimed any form of injunctive relief and sought only monetary damages.[6] ER-163.

---

[6] Allen also brought supplemental state law claims of false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and negligence. ER-163. Those claims were dismissed on the pleadings, and Allen did not appeal or assign error to their dismissal.

### 1. The District Court Granted Summary Judgment to DOC on Allen's ADA Claims

The district court dismissed Allen's ADA claims on summary judgment, finding he offered "no evidence that DOC violated the ADA by denying him access to a single cell." ER-167. The district court noted that "Allen's requests for single-cell accommodations were consistently, appropriately reviewed by staff and administrators," and that the decisions to deny his requests "were not made by a single staff member, but by multiple committees, administrators, and medical personnel over a period of more than ten years." ER-167. Allen "provided no evidence suggesting that DOC procedures were improper in any way" and "merely dispute[d] the outcome of those determinations as discriminatory." ER-167.

The district court also found that Allen offered no evidence he was denied a single-occupancy cell or use of medical equipment on the basis of disability. ER-167. The court noted that recovering damages under the ADA requires not only a showing of discrimination, but also deliberate indifference, a high standard that Allen did not meet. ER-169. Because Allen did not identify any facts demonstrating that DOC's failure to provide him a single-occupancy cell in the prison's general population or the limitations placed on his use of a wheelchair were the result of intentional discrimination on the basis of disability, the district court dismissed his ADA claims on summary judgment. ER-168-71.

9

**2.      The District Court Also Granted Summary Judgment to DOC and to Sergeant Kaehler on Allen's § 1983 Claims**

The district court also dismissed Allen's § 1983 claims on summary judgment, finding that he offered insufficient evidence of deliberate indifference on the part of Sergeant Kaehler and that his claims were barred by qualified immunity. ER-173-74. Allen does not challenge the dismissal of his § 1983 claims on appeal.

## V.      STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1421 (9th Cir. 1989). The Court must determine whether, viewing the evidence in the light most favorable to the non-moving party, there are any genuine issues of material fact and whether the district court correctly applied the substantive law. *Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1339-40 (9th Cir. 1989).

Summary judgment is proper "if the pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an element of a claim on which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To defeat a motion for summary judgment, the non-moving party must go beyond the pleadings and set forth specific facts showing that a genuine issue exists.

10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In doing so, the non-moving party must present significant and specific probative evidence, not simply some metaphysical doubt. *Id.* In ruling on whether this burden has been met, the Court must consider the evidentiary burden the non-moving party must meet at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## VI.    SUMMARY OF ARGUMENT

Unlike parties seeking only injunctive relief, plaintiffs seeking damages under Title II of the ADA must show that they were denied meaningful access to a public entity's programs, services, or activities as a result of intentional discrimination on the basis of a disability. Intentional discrimination requires a showing of deliberate indifference, which requires knowledge that harm to a federally protected right is substantially likely, and a failure to act on that likelihood that is more than negligent.

Though Allen argues the district court improperly treated his ADA claim as a "challenge to inadequate medical care" and applied the wrong standard to evaluate causation, the fact remains that Allen did not establish a basis *for damages* under the ADA because he failed to show intentional discrimination, which requires evidence of deliberate indifference that he did not offer. *See Martinez v. Cnty. of Alameda*, 512 F.Supp.3d 978, 986 (N.D. Cal. 2021) (citing *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) in noting that while plaintiffs seeking injunctive relief under Title II of the ADA "need only allege that [they were] denied meaningful

11

access to a public entity's programs, services, or activities[,]" . . . "[t]o seek monetary damages . . . a plaintiff must further allege that the violations were intentional, which has been held to require a defendant's deliberate indifference"). Allen's attack upon this Court's decision in *Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010) and the Seventh Circuit's opinion in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), arguing that they are out-of-step with more recent interpretations of the ADA, is thus irrelevant, as are his references to readily distinguishable, unpublished cases.

Allen failed to show that DOC's denial of his demand for a single-occupancy cell in the general population or his medical provider's decision to limit his use of a wheelchair to long distances were made with deliberate indifference to his alleged disability. Because he failed to show DOC intentionally discriminated against him, the district court properly granted summary judgment on Allen's ADA claims.

The district court also properly dismissed Allen's § 1983 claims, and Allen neither assigns error to this ruling nor presents any argument upon it. As a result, Allen has abandoned his § 1983 claims on appeal. This Court should affirm.

## VII. ARGUMENT

**A.** **The District Court Properly Dismissed Allen's Damages Claims Under the ADA Because He Failed to Present Sufficient Evidence of Discriminatory Intent**

Allen argues the district court mischaracterized "[his] evidence that he was entitled to but denied a single-cell accommodation and a wheelchair" as a "challenge

to inadequate medical treatment." Br. of App. at 6. But the district court never found that Allen demonstrated an "entitlement" to either, much less a basis for the only relief he sought: an award of compensatory damages.

To be sure, Title II of the ADA provides for private causes of action for injunctive relief and damages. *U.S. v. Florida*, 938 F.3d 1221, 1226 (11th Cir. 2019) (citing *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 160 (2017)). Prospective injunctive relief, however, is no longer available once an inmate is released from custody. *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012); *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995). Here, because Allen was released while his case was pending, he was no longer subject to the conditions of confinement about which he complained, and the only form of relief available to him was damages. ER-163.

Compensatory damages[7] under Title II of the ADA are subject to a higher standard than injunctive relief and are available only where the conduct at issue resulted from intentional discrimination on the basis of disability. *Duvall*, 260 F.3d at 1138 (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)). Intentional discrimination requires a showing of deliberate indifference. *Id*. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id*. at 1139

---

[7] Punitive damages are categorically unavailable in private suits under Title II of the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

13

(citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1988)). It is a high standard because a failure to act "must be a result of conduct that is more than negligent and involves an element of deliberateness." *Id*.

Here, Allen sought damages under the ADA based upon 1) DOC's denial of his demands for a single-occupancy cell in the prison's general population, and 2) his provider's decision to restrict his use of a wheelchair to long distances. Neither claim has merit.

**1.    Allen Failed to Demonstrate Intentional Discrimination in the Denial of His Demand for a Single-Occupancy Cell**

As the district court noted, Allen's demands for a single-occupancy cell were considered and denied by multiple committees, administrators, ADA coordinators, and medical personnel over a period of more than ten years. ER-167. They were consistently rejected for a variety of reasons, including lack of single-cell availability and lack of medical documentation in support of the request. ER-45. Allen provides no evidence that the members of any of these panels based their decisions to deny his demand for a single-occupancy prison cell on improper disability discrimination. Instead, he argues the denials themselves were discriminatory because the ADA required DOC to make special accommodation for him. Br. of App. at 13-14 (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1266 (9th Cir. 2004) and *Dunlap v. Ass'n of Bay Area Gov'ts*, 996 F. Supp. 962, 965 (N.D. Cal. 1998) in

14

arguing "[t]he ADA . . . creates an affirmative duty in some circumstances to provide special, preferred treatment").

But unlike the plaintiffs in *McGary* and *Dunlap* who sought injunctive relief, Allen disclaimed any request for injunctive relief and sought only damages. ER-163. Contrary to his argument,[8] in order to obtain *damages*, the ADA absolutely required Allen to show that DOC "treated him differently because of his disability." *See*, *e.g.*, *Lovell v. Chandler*, 303 F.3d 1039, 1056 (9th Cir. 2002) (quoting *Ferguson*, 157 F.3d at 674, in holding that "compensatory damages are not available under Title II absent a showing of discriminatory intent"); *Duvall*, 260 F.3d at 1138 (holding that "[t]o recover monetary damages under Title II of the ADA . . . a plaintiff must prove intentional discrimination on the part of the defendant").

Allen made no such showing. Even after his mental health providers opined that a single-occupancy cell would benefit him – though, crucially, not that he *required* one as an accommodation under the ADA – Allen offered no evidence that the subsequent denial of that recommendation at the headquarters level was based upon improper disability discrimination. Allen thus failed to establish a basis for damages under the ADA.

To the extent Allen argues the district court applied an incorrect standard in evaluating causation for his ADA claims, his argument also fails. Br. of App. at 14-

---

[8] Br. of Appellant at 13.

15

16. Establishing causation for a claim seeking damages under the ADA requires proving 1) knowledge that a harm to a federally protected right is substantially likely, and 2) a failure to act upon that likelihood. *Duvall*, 260 F.3d at 1139. Here, however, Allen did not merely seek a single-occupancy cell; indeed, the record reflects that he was consistently *given* a single-occupancy cell, albeit in the IMU where he did not wish to reside. ER-45-46. Instead, Allen demanded a single-occupancy cell *in the prison's general population*. ER-58. There is no right – federally protected or otherwise – to a prison cell of one's choice. *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Nor does the ADA guarantee such a right to inmates who claim to require such an accommodation due to mental disabilities. *See*, *e.g.*, *Coleman v. Virga*, No. 2:17-cv-0851, 2019 WL 2866724, at *10 (E.D. Cal. 2019) (finding that denial of single-occupancy cell assignment requested based on mental illness failed to state a claim under the ADA); *Teters v. Wash. State*, No. 3:18-cv-05481, 2019 WL 1959866, at *4-5 (W.D. Wash. 2019), *report and recommendation adopted*, 2019 WL 1957992 (2019) (rejecting, under *Simmons*, 609 F.3d at 1022, claim brought by an inmate who alleged an ADA violation as a result of the failure to assign him a single-occupancy cell out of general population based upon panic attacks resulting from PTSD).

For the same reason, Allen's citations to this Court's unpublished opinions in *Muñoz v. California Department of Corrections*, 842 F. Appx. 59, 62 (9th Cir. 2021),

16

*Barker v. Osemwingie*, Nos. 20-15503, 20-15840, 2021 WL 5564625 (9th Cir. 2021), and *Morris v. California*, No. 21-16059, 2022 WL 2901730 (9th Cir. 2022) are unhelpful. Unlike Allen, the plaintiff in *Muñoz* was an active inmate who sought an injunction requiring the California Department of Corrections to provide him a lower-tier bunk due to a knee injury that prevented him from reaching a top bunk. *Muñoz*, 842 F. Appx. at 61-62. He was not a former inmate seeking damages based on a prison's failure to assign him to a single-occupancy cell. While "disability accommodations under the ADA [may] include basic necessities of life for disabled prisoners and parolees, such as accessible beds,"[9] a single-occupancy cell in the location or prison unit *of one's choice* is not a "basic necessity of life." And, unlike the court in *Muñoz*, the district court in this case did not rely on a superseded standard in order to determine that Allen was not disabled. *Id*. at 62. To the contrary, the district court here assumed – without deciding – that Allen *was* a "qualified individual with a disability for purposes of the ADA." ER-166.

*Barker* is likewise inapposite. Barker was an active inmate who sought damages under the ADA for physical injuries he sustained from a failed attempt to transfer him from his wheelchair to the toilet without the use of a Hoyer lift. *Barker*, 2021 WL 5564625, at *1. Like the accessible bed the plaintiff sought in *Muñoz*,

---

[9] *Muñoz*, 842 F. Appx. at 62 (quoting *Armstrong v. Brown*, 732 F.3d 955, 957 (9th Cir. 2013)).

17

access to toileting facilities is a basic necessity of life. Assignment to a single-occupancy cell in a prison's general population is not. Moreover, in *Barker*, this Court held that "because Barker seeks damages under Title II [of the ADA], he will need to plead facts plausibly suggesting that the defendants acted with deliberate indifference under the test established in *Duvall*." *Id*. Because Allen did not do so in this case, *Barker* supports DOC's argument here.

Finally, *Morris* is also inapt. In *Morris*, this Court vacated and remanded the dismissal with prejudice of an inmate's ADA claim after he was denied a wheelchair and housing with a wheelchair ramp. 2022 WL 2901730, at * 1. Like the plaintiff in *Muñoz*, the plaintiff in *Morris* was an active inmate seeking injunctive relief, not a former inmate seeking damages. *Id*. Even so, this Court affirmed the dismissal of his claim under Title II of the ADA, finding he had not identified any program, service, or activity from which he had been excluded as a result of the failure to provide him with a wheelchair or ramp. *Id*. Because Morris had proceeded pro se, however, the Court nevertheless remanded his complaint to the district court with instructions to grant him leave to amend. *Id*. at *2.

Unlike the plaintiff in *Morris*, Allen did not proceed pro se below, nor did he seek injunctive relief. ER-163. Allen also was not denied a wheelchair – his medical provider merely limited his use of a wheelchair to long distances[10] – nor was he

---

[10] ER-134.

18

denied housing or even a single-occupancy cell. He was merely denied a single-occupancy cell *where he desired it* in the prison's general population. ER-47, ER-56-58, ER-61. Like *Muñoz* and *Barker*, *Morris* is therefore not on point.

Furthermore, setting aside that *Muñoz*, *Barker*, and *Morris* were all unpublished opinions that are not precedential, all were appeals from decisions dismissing the plaintiffs' claims at the pleading stage. Allen, by contrast, was given a full and fair opportunity to conduct discovery and to be heard on the merits of his ADA claim, with the benefit of counsel. He simply lost on summary judgment because he failed to provide sufficient evidence of intentional discrimination as required in order to obtain the only form of relief he sought: an award of compensatory damages. *Muñoz*, *Barker*, and *Morris* have nothing to say about that.

By comparison, *Teters v. Washington State* is more apt. Like Allen, Teters sued under Title II of the ADA, alleging DOC failed to reasonably accommodate his PTSD by failing to place him in a single-occupancy cell. 2019 WL 1959866, at *1. Like Allen, Teters also sought damages, arguing that as a result of his cell assignment in the general population, he suffered multiple panic attacks, lost consciousness, and struck his head, causing injuries. *Id*. at *1-2.

While his case was pending, Teters was transferred to another institution. *Id*. As a result, the court found that his claims for declaratory and injunctive relief were moot. *Id*. at *3. The court went on to reject his damages claim under Title II of the

ADA, finding it "amount[ed] to asserting that his PTSD was not properly treated," which the court noted "is precisely the type of claim that is 'not actionable under the ADA' without more." *Id*. at *5 (quoting *Simmons*, 609 F.3d at 1022).

*Teters* is directly on point. Like Allen, the plaintiff in *Teters* claimed to have PTSD, which he alleged required special accommodation in the form of a single-occupancy cell. *Id*. at *1-2. And like Allen, the plaintiff in *Teters* identified no particular service, program, or activity from which he was excluded; he merely argued "that prison officials inappropriately placed him in the general population and that he suffered an injury as a result." *Id*. at *5. That does not state a claim under Title II of the ADA, let alone a claim for damages, which requires a higher showing of intentional discrimination based on disability. *Duvall*, 260 F.3d at 1138.

This Court has long recognized that prison officials have discretion to assign inmates to particular prisons or prison cells. *Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991). And it has historically allowed prison officials the "freedom to exercise [such] administrative authority without judicial oversight." *Id*. The ADA is not a vehicle to subject routine prison decisions about inmate cell assignments to such judicial oversight. *Teters*, 2019 WL 1959866, at *4-5. In this case, Allen's demands for a single-occupancy cell were accommodated, they simply were not accommodated to his satisfaction because he was not given a cell *in the general population*. Allen's damages claim under the ADA related to his cell assignment

20

therefore fails. This Court should affirm the district court's award of summary judgment dismissing Allen's claims under Title II of the ADA.

### 2. Allen Failed to Establish Intentional Discrimination in His Medical Provider's Decision to Restrict His Use of a Wheelchair to Long Distances

Allen also failed to show that his medical provider's decision to restrict his use of a wheelchair to long distances was the result of intentional discrimination or deliberate indifference under the ADA. This Court should therefore affirm the district court's dismissal of Allen's ADA damages claim under this theory as well.

Before the district court, Allen argued his medical provider changed his HSR at the insistence of Sergeant Kaehler, whom he speculated "ran to PA Meyers and 'directed' her to change his equipment needs." ER-161. But Sergeant Kaehler had no authority to make[11] – and did not make[12] – any changes to Allen's HSR. Moreover, Allen was not present for any alleged conversation between PA Meyers and Sergeant Kaehler, and he offered no admissible evidence that they colluded to deprive him of any medical equipment on the basis of disability. ER-90-91, ER-100-01, ER-114-15. Indeed, Allen provided no evidence that the durable medical equipment at issue was medically necessary at the time PA Meyers changed his HSR; he merely argued that Dr. Curl's later decision to restore unrestricted use of it

---

[11] ER-89.

[12] ER-97.

21

demonstrated that he should have had unlimited access to it all along. ER-168. But, as the district court noted, Dr. Curl was not Allen's medical provider, nor did she or anyone else ever opine that the decision to limit Allen's access to any medical equipment was unreasonable or inappropriate at the time it was made. ER-169-70. Allen thus failed to establish a genuine issue of material fact as to whether he was intentionally discriminated against on the basis of disability.

In any event, the record is clear that PA Meyers' changes to Allen's HSR did not *deprive* him of anything. Instead, PA Meyers merely *limited* Allen's use of a wheelchair to "long distances." ER-97. As the district court noted, Allen offered no evidence that PA Meyers' "decision to limit his wheelchair access, *while housed in the IMU*,[13] was an unreasonable accommodation under the ADA." ER-168 (emphasis added). And, as this Court has held, restricting or limiting access to medical equipment due to a change in custody status does not represent improper discrimination on the basis of disability. *See Simmons*, 609 F.3d at 1021-22 ("Even if [the plaintiff] were a qualified individual with a disability and was denied access to . . . programs at the jail, such denial was not because of his [disability], but due to a jail policy restricting the activities of inmates on suicide watch."); *see also Kiman*

---

[13] *See* ER-169-70 (noting that Dr. Curl "intervened at Allen's request for accommodations after she was asked by both Allen and his advance care practitioner to resolve whether Allen should receive 'an exception' to IMU's 'very restrictive' policy of not allowing medical equipment inside his cell").

*v. New Hampshire Dept. of Corr.*, 451 F.3d 274, 285-86 (1st Cir. 2006) (denying inmate use of his cane while in high security unit did not violate Title II of the ADA).

As with his claim regarding DOC's failure to assign him to a single-occupancy cell, Allen argues the district court erred by relying on Eighth Amendment case law to analyze the deliberate indifference standard applicable to his ADA claim. Br. of App. at 15 (citing *Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004), and *Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996)). But as this Court has recognized, deliberate indifference is a high standard to meet in either context. *Compare Csutoras v. Paradise High Sch.*, 12 F.4th 960, 966 (9th Cir. 2021) (characterizing deliberate indifference as a "high bar" in the context of claims seeking damages under Title II of the ADA), *with Toguchi*, 391 F.3d at 1060 (describing deliberate indifference as "a high legal standard" in the Eighth Amendment context). Both require a *mens rea* greater than negligence that "involves an element of deliberateness." *Duvall*, 260 F.3d at 1139; *Balla v. Idaho*, 29 F.4th 1019, 1025-26 (9th Cir. 2022).

Here, that bar was not met because Allen offered no evidence *at all* as to the *mens rea* of the person who made the decision to change his HSR: PA Meyers. *See* ER-170 (noting that "Kaehler did not modify [Allen's] HSR; Meyers did"). For her part, PA Meyers testified she decided to change Allen's HSR based on the exercise of her medical judgment, not intentional discrimination against Allen. ER-85-89. Allen offered no evidence to the contrary beyond his own speculation as to PA

23

Meyers' motives, nor did he identify any government service, program, or activity to which the "long distance" restriction placed on his wheelchair use deprived him of access.[14]

Those failures are fatal to any damages claim under the ADA. *See Updike v. City of Gresham*, 62 F.Supp.3d 1205, 1210 (D. Or. 2014) (citing *Duvall*, 260 F.3d at 1139 in noting that, to recover damages under the ADA, a plaintiff must show that the defendant "actually dr[ew] the inference" that harm to a federally protected right was substantially likely and failed to act upon that likelihood). To the extent Allen relies on the limitations PA Meyers placed on his wheelchair use, this Court should reject his argument and affirm the summary dismissal of his ADA damages claim.

**B.  By Failing to Assign Error to or Present Any Argument Related to the Dismissal of His Eighth Amendment Claim, Allen Has Abandoned Any Claim Under § 1983 on Appeal**

Finally, by not assigning error to the district court's dismissal of his § 1983 claim and offering no argument upon it, Allen has abandoned that claim on appeal.

---

[14] The district court properly refused to consider Allen's claim that he was denied access to classification appointments because he raised it for the first time in response to DOC's motion for summary judgment. ER-171-72. As the district court correctly noted, parties may not assert unpled theories and claims for the first time in response to summary judgment. ER-171 (citing *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006)). This Court should also decline to consider this claim. *See* Br. of App. at 3 (alleging Sergeant Kaehler refused to let Allen use his wheelchair when taking him to a classification appointment, causing him to miss the appointment).

24

This Court has often recognized that an appellant's failure to assign error to or offer argument upon a district court's dismissal of certain claims on appeal waives or abandons those claims. *E.g.*, *Brown v. Rawson-Neal Psych. Hosp.*, 840 F.3d 1146, 1148-49 (9th Cir. 2016); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995).

Here, Allen did not assign error to, or offer any argument upon, the district court's order granting summary judgment to DOC on his Eighth Amendment deliberate indifference claim. In addition, as this Court has held, an alleged violation of Title II of the ADA cannot form the basis of a claim under § 1983. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Further, Allen cannot remedy these deficiencies in his reply, as any attempt to assign error to or present argument on his § 1983 claim would come too late. *See Martinez-Serrano v. I.N.S.*, 94 F.3d 1256, 1259-60 (9th Cir.1996) (declining to consider arguments raised for the first time in appellant's reply brief). Accordingly, on appeal, Allen has abandoned any claim under § 1983.

## VIII. CONCLUSION

Throughout Allen's incarceration, DOC frequently and appropriately evaluated his housing assignment needs, as well as his personal and ongoing desire to be housed in a single-occupancy cell in the general population. ER-43. Despite this, Allen was persistently and intentionally disruptive in an effort to "do his time his way." ER-44. But there is no federal right to a single-occupancy cell in the

25

general population under Title II of the ADA or any other provision, and there is certainly no evidence that Allen was denied a single-occupancy cell due to intentional discrimination on the basis of a disability. As a result, Allen's claim seeking damages under Title II of the ADA based on his cell assignment fail as a matter of law. *Duvall*, 260 F.3d at 1139.

Allen's claim arising out of his medical provider's decision to restrict his use of a wheelchair to long distances likewise fails. Allen offered no evidence that PA Meyers' decision to change his HSR was the result of intentional discrimination or any conversation with Sergeant Kaehler, nor did Allen identify any prison service, program, or activity he was deprived of as a result of that temporary change.

Finally, Allen has abandoned any § 1983 claim on appeal.

Accordingly, DOC asks this Court to affirm the district court's dismissal of Allen's claims on summary judgment.

RESPECTFULLY SUBMITTED this 15th day of June 2026.

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.

*/s/ Michael J. Throgmorton*
Michael J. Throgmorton, WSBA #44263
2674 RW Johnson Rd. Tumwater, WA 98512
P.O. Box 11880 Olympia, WA 98508-1880
Phone: (360) 754-3480
Fax: (360) 357-3511
Email: mthrogmorton@lldkb.com
Attorney for Defendants-Appellees

26

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2, Defendants-Appellees hereby certify that no other cases pending in this Court are deemed related.

Signature:

LAW, LYMAN, DANIEL, KAMERRER & BOGDANOVICH, P.S.

*/s/ Michael J. Throgmorton*
Michael J. Throgmorton, WSBA #44263
2674 RW Johnson Rd. Tumwater, WA 98512
P.O. Box 11880 Olympia, WA 98508-1880
Phone: (360) 754-3480
Fax: (360) 357-3511
Email: mthrogmorton@lldkb.com
Attorney for Defendants-Appellees

27

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form*: http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 26-698

I am the attorney or self-represented party.

**This brief contains 6,332 words,** including zero words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature:** *s/ Michael J. Throgmorton* **Date: 6/15/2026**
*(use "s/[typed name]" to sign electronically-filed documents)*

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2026, I served the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature:                                 */s/ Tam Truong*

Tam Truong, Legal Assistant