**No. 26-698**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

---

GREGORY ALLEN,

*Plaintiff-Appellant*,

v.

WASHINGTON DEPARTMENT OF CORRECTIONS, *et al.*,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Western District of Washington
No. 3:23-cv-5746
Hon. Benjamin H. Settle

---

# APPELLANT'S REPLY BRIEF

---

Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*
*Gregory Allen*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

ARGUMENT ........ 4

I. Fact Questions Remain as to Whether Defendant Was Deliberately Indifferent to Allen's Need for Accommodation. ........ 4

a) The single-cell accommodation ........ 4

b) The wheelchair accommodation ........ 7

II. The District Court Erred on Causation. ........ 10

III. The District Court Used the Erroneous Deliberate Indifference Standard. ........ 11

IV. This Court Should Not Affirm on the Grounds that a Cell in Solitary Confinement Was a Reasonable Accommodation. ........ 13

V. Defendant Does Not Argue that a Wheelchair Is "Medical Treatment" or that it Is Entitled to Sovereign Immunity. ........ 17

CONCLUSION ........ 18

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

### Cases

*Bolker v. Comm'r*, 760 F.2d 1039 (9th Cir. 1985) .......... 14–15

*Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996) .......... 17

*Csutoras v. Paradise High School*, 12 F.4th 960 (9th Cir. 2021) .......... 12–13

*Duvall v. Cnty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) .......... 2–3, 6, 11, 16

*Eaton v. Eynon*, No. 22-35749, 2023 WL 5275016 (9th Cir. Aug. 16, 2023) .......... 6

*Jackson v. McIntosh*, 90 F.3d 330 (9th Cir. 1996) .......... 13

*McGary v. City of Portland*, 386 F.3d 1259 (9th Cir. 2004) .......... 11

*Mitchum v. Honea*, No. 24-5777, 2026 WL 2149712 (9th Cir. July 27, 2026) .......... 8

*Munoz v. California Department of Corrections and Rehabilitation*, 842 F. App'x 59 (9th Cir. 2021) .......... 8

*Simmons v. Navajo County*, 609 F.3d 1011 (9th Cir. 2010) .......... 17

*Toguchi v. Chung*, 391 F.3d 1051 (9th Cir. 2004) .......... 13

*Updike v. Multnomah Cnty.*, 870 F.3d 939 (9th Cir. 2017) .......... 6, 13

*Weldeyohannes v. Washington*, 162 F.4th 972 (9th Cir. 2025) .......... 6, 8

*Whitall v. California Dep't of Corr. & Rehab.*, 854 F. App'x 219 (9th Cir. 2021) .. 6

*Wong v. Regents of Univ. of California*, 192 F.3d 807 (9th Cir. 1999) .......... 15

## INTRODUCTION

Gregory Allen had two qualifying disabilities under the Americans with Disabilities Act. First, he had post-traumatic stress disorder after being raped in prison. He sought a disability accommodation of a single-cell permit. Second, he could only walk twenty or thirty feet without pain, sometimes being unable even to operate a wheelchair without an aid. He sought a disability accommodation of a wheelchair.

This appeal concerns two ways in which Defendant failed to accommodate his disabilities. First, for ten years Defendant denied him a single-person cell. Even when a committee composed of Allen's mental health providers, medical providers, and custody staff recommended that he be assigned to a single-person cell, staff at headquarters overruled their recommendation without explanation. ER-77; ER-161. Second, after a staff member got angry at Allen, he went to a medical staff member (who had never examined Allen) and got his accommodation changed, returning minutes later to confiscate his wheelchair. Allen went six months without it. Making all inferences in Allen's favor, fact questions remain whether this record demonstrates ADA violations that warrant damages.

Most of Defendant's defense of the district court's order relies on the heightened showing required of a plaintiff when seeking damages under the ADA. Defendant is correct that Allen must show "intentional discrimination" to obtain

damages and that, in this context, that means a showing of "deliberate indifference." Ans. Br. 11. In *Duvall*, this Court explained the two-step process by which this Court can conclude that a plaintiff has shown "both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). First, if "the plaintiff has alerted the public entity to his need for accommodation … the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." Second, the entity's failure to act must involve "an element of deliberateness" rather than merely being "negligent." *Id.* at 1139.

There are multiple ways a plaintiff can bring an ADA claim. One involves an intentional discrimination claim, in which a defendant treated the plaintiff worse because of his disability. Another is a failure to accommodate claim, which works differently. The ADA creates affirmative duties to provide those with disabilities special treatment, or reasonable accommodations, when reasonable to do so. Although the word "discrimination" often means differential treatment, under the ADA a failure to provide such special treatment *is* disability discrimination. Both of Allen's claims are under a failure to accommodate theory.

Within the ADA, there are therefore two distinct concepts of intentional discrimination. One, differential treatment on the basis of disability, is a theory of

liability under the ADA irrelevant to this case. The other, deliberate indifference as defined in *Duvall*, Allen must demonstrate in order to obtain damages.

Defendant blurs the line between these two different concepts of intentional discrimination. Allen's argument that "the ADA required DOC to make special accommodation for him" is wrong, Defendant writes, because he sought damages. Ans. Br. 14–15. As a result, Allen needed to show that the decisionmakers conducted "improper disability discrimination" in denying him an accommodation. Ans. Br. 14. "[I]n order to obtain *damages*, the ADA absolutely required Allen to show that DOC 'treated him differently because of his disability.'" Ans. Br. 15 (emphasis added). Allen failed to meet this standard, Defendant argues, because even if he should have had a single-cell, he could not show that the decision denying him one "was based upon improper disability discrimination." Ans. Br. 15. These statements are all incorrect. They confuse deliberate indifference as needed to obtain damages with intentional discrimination as a theory of liability. This Court should apply the correct legal standard, identify the material fact questions that remain in dispute, and reverse.

# ARGUMENT

## I. Fact Questions Remain as to Whether Defendant Was Deliberately Indifferent to Allen's Need for Accommodation.

### *a) The single-cell accommodation*

Allen was raped in prison and developed post-traumatic stress disorder as a result. He repeatedly requested a single-person cell as a disability accommodation over a period of years.

In August 2020, the single-cell housing committee met to determine whether Allen should receive a single cell. ER-77. The psychiatric physician, Dr. Baez, said that Allen "may significantly benefit from single-cell housing." *Id.* The psychiatric associate, Luke Waggoner, said that Allen alleged he was raped in prison and his Prison Rape Elimination Act (PREA) risk assessment scored him as a "potential victim." *Id.* Allen "fixates on being in a single cell" and "when temporarily accommodated" has promoted in custody because "his mental health symptoms [we]re moderated." *Id.* Waggoner said that "Allen would strongly benefit from a single cell assignment in order to continue to address his mental health issues." *Id.* A representative from the prison's said that Allen did not have an independent basis for a single-cell for his medical issues such as his wheelchair, but did not oppose the assignment if there was a mental health or behavioral basis. *Id.* Waggoner later added that he spoke with the PREA compliance manager who supported the single cell assignment. ER-78.

The group submitted a recommendation that Allen receive a single cell housing assignment. ER-77. The group's report to DOC headquarters said that it determined that Allen "not only meets the criteria of single cell occupancy but is in need of it." ER-79. This was true for multiple reasons, including his physical disabilities and mental disabilities, the latter of which "are triggered by reminders of traumatic events that occurred in DOC housing," a reference to his sexual assault. *Id.* The group wrote that without a single cell, Allen will "continue to experience a significant impairment in functioning that will be detrimental to his ability to program and promote."

DOC headquarters denied this recommendation. ER-80. It provided no explanation. *Id.* There were two checkboxes, and it checked "Deny Single Cell." *Id.* Defendant did not provide any other explanation in the summary judgment record for this decision.

The district court wrote that Allen's single-cell requests were "consistently, appropriately reviewed by staff and administrators." ER-167. But Defendant does not explain the basis of DOC's decision denying a single-cell accommodation against its own staff's strong recommendation. There is therefore no way to know whether the decision was "appropriate" (or to use the language of the ADA, reasonable.)

This Court has repeatedly held that a defendant "must consider the particular individual's need when conducting its investigation into what accommodations are reasonable." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). "A denial of a request without investigation is sufficient to survive summary judgment on the question of deliberate indifference." *Updike v. Multnomah Cnty.*, 870 F.3d 939, 954 (9th Cir. 2017). Allen received worse—prison staff investigated, decided he needed an accommodation, then headquarters denied the accommodation without any further investigation and without any explanation for its decision. This Court has repeatedly denied summary judgment to defendants on similar facts. *See id.* at 958 (denying summary judgment to jail officials who failed to provide a detainee with his requested accommodation and did not meet their burden of showing that the accommodation offered was reasonable as a matter of law); *see also Weldeyohannes v. Washington*, 162 F.4th 972, 977 (9th Cir. 2025) (fact questions remained as to whether prison officials were deliberately indifferent under the ADA when they failed to adequately investigate a prisoner's need for an accommodation); *Eaton v. Eynon*, No. 22-35749, 2023 WL 5275016, at *2 (9th Cir. Aug. 16, 2023) (holding that a prison was deliberately indifferent when a prisoner alerted the prison of the need for an accommodation and its response, on the plaintiff's facts, was inadequate); *Whitall v. California Dep't of Corr. & Rehab.*, 854 F. App'x 219, 220 (9th Cir. 2021) (same).

Defendant's alternative explanations in its answering brief lack record support. It argued, for instance, that Allen's request for a single-cell was denied "for a variety of reasons, including lack of single-cell availability and lack of medical documentation in support of the request." Ans. Br. 14. The record citation, however, provides no support for a "lack of medical documentation in support of the request." *Id.* (citing ER-45). Defendant's record citations in this section only discuss the single-cell decisions made in 2010 and 2011, not the many years subsequent. And most importantly, Defendant cannot confidently state the reason (among "the variety") that Allen lacked access to a single cell even after staff recommended he receive one because the decisionmaker provided no reason.

*b) The wheelchair accommodation*

When a staff member, Sergeant Jason Kaehler, was taking Allen to a classification appointment, he refused to let Allen use his wheelchair. ER-162. Allen therefore missed the meeting. ER-123. When Allen complained, Kaehler responded that he had seen him walking to the door and asked what his disability was. ER-124. Allen refused to answer. *Id.* Allen got upset and Kaehler went to a medical staff member to have his accommodations changed as retaliation. ER-124. Medical staff agreed to do so. *Id.*; ER-161. Kaehler returned to Allen's cell minutes later with the modified accommodations and laughed as he took away Allen's leg brace and wheelchair. *Id.* Allen went without his wheelchair except for long distances for six

months until a prison doctor reviewed his medical records and returned it to him. ER-124.

A jury could find deliberate indifference from the abrupt and arbitrary removal of a needed disability accommodation without adequate investigation and immediately after a hostile encounter with Kaehler. In *Munoz v. California Department of Corrections and Rehabilitation*, for instance, this Court held fact questions remained whether a medical official who withdrew an accommodation without even examining the prisoner was deliberately indifferent. 842 F. App'x 59, 62 (9th Cir. 2021); s*ee also Mitchum v. Honea*, No. 24-5777, 2026 WL 2149712, at *3 (9th Cir. July 27, 2026) (an "abrupt termination[n] of accommodation" demonstrates deliberateness). A long line of authority establishes that a prison cannot ignore a prisoner's documented accommodation. *See Weldeyohannes v. Washington*, 162 F.4th 972, 976 (9th Cir. 2025). Defendant here did worse, not merely ignoring an accommodation but withdrawing it without an adequate investigation into whether the decision was warranted.

Besides again misstating the intent standard, Defendant defends the district court's conclusion on two bases. First, it argues that the eventual reinstatement of Allen's wheelchair six months later by Dr. Curl does not conclusively demonstrate that he needed the accommodation all along. Second, it argues that the retaliatory

motive of Kaehler cannot be imputed to Meyers, who was the one who technically rescinded the accommodation. Neither is persuasive.

The reinstatement of Allen's wheelchair by Dr. Curl on its own may not conclusively demonstrate that Allen required a wheelchair, but that misstates both the record and the summary judgment standard. Meyers herself renewed Allen's accommodation for a wheelchair in August 2020. ER-123. Allen testified that he can only walk twenty to thirty feet without severe pain even when he is doing well. *Id.* The dispute that started the conflict with Sergeant Kaehler involved Allen missing a classification meeting because he could not physically make it there without a wheelchair. ER-124. Dr. Curl filled out paperwork providing a wheelchair and identified it as "Meet[ing] Disability Accommodation Needs." ER-138. Conversely, there is essentially no record evidence supporting the conclusion that Allen did not need a wheelchair. That Dr. Curl's reinstatement of the wheelchair is not conclusive as to Allen's need for a wheelchair is irrelevant—there certainly remain fact questions.

Second, Defendant's argument that Meyers based her decision on medical judgment completely lacks record support. Defendant writes in its answering brief that "Meyers testified she decided to change Allen's [accommodation] based on the exercise of her medical judgment, not intentional discrimination against Allen." Ans. Br. 7 (citing ER-85-89); Ans. Br. 23 (same). The cited record does not support that

claim. In fact, Meyers testified that she had no memory of this event whatsoever. ER-90; ER-91. Sergeant Kaehler did not remember the incident either. ER-106; ER-161. Defendant cannot put forth testimony that neither staff member recalled the event and then ask this Court to infer that their (forgotten) motivations were benign.

Even were this Court permitted to make inferences in Defendant's favor, it is difficult to imagine what medical judgment Meyers could possibly have exercised. Sergeant Kaehler left Allen's cell, got the paperwork filled out to confiscate his wheelchair, and came back and did so. ER-116–17. He was gone eight to ten *minutes*. ER-116. Meyers does not recall examining Allen or even this event. ER-92. There is therefore no record support for the conclusion that Allen lost his wheelchair for six months because of an exercise in medical judgment.[1]

## II. The District Court Erred on Causation.

Allen explained in his opening brief that the district court erred in its causation ruling. Op. Br. 12–14. Allen did need to show his disability caused his failure to meaningfully access services, but he did not, as the court held, need to show that Defendant treated him differently because of his disability. The entire premise of a

---

[1] Defendant mentions in passing another purported alternative basis for affirmance, which is that Allen failed to identify a program, service, or activity that lacking the ability to ambulate prevented him from accessing. Ans. Br. 24. Both the U.S. Supreme Court and this Court, however, have held that "mobility" is itself a service inside a correctional facility. *United States v. Georgia*, 546 U.S. 151, 157 (2006); *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1068 (9th Cir. 2010).

failure to accommodate claim is that a public entity treated someone with a disability the same as those without when difference was required. *McGary v. City of Portland,* 386 F.3d 1259, 1266 (9th Cir. 2004). Allen's arguments that he lacked meaningful access to mobility and to a safe housing environment because of the combination of his disabilities and Defendant's failure to reasonably accommodate them satisfy this element.

Defendant responds by writing that Allen's "argument fails" because "[e]stablishing causation for a claim seeking damages under the ADA requires proving 1) knowledge that a harm to a federally protected right is substantially likely, and 2) a failure to act upon that likelihood." Ans. Br. 16 (citing *Duvall*, 260 F.3d at 1139). As explained above, this is not the causation standard of an ADA claim. It is the deliberate indifference standard. Defendant's cited source, *Duvall*, contains identical phrasing: "*Deliberate indifference* requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d at 1139 (emphasis added). Allen has met the ADA's causation standard, and Defendant does not meaningfully contest that element.

## III. The District Court Used the Erroneous Deliberate Indifference Standard.

Allen's opening brief explained that the district court erred when it analyzed whether "DOC acted with deliberate indifference … as required to recover damages

under the ADA" by exclusively citing Eighth Amendment cases and invoking the substantive law of the Eighth Amendment. Op. Br. 14–17. Defendant argues the district court was correct because, "as this Court has recognized, deliberate indifference is a high standard to meet in either context." Ans. Br. 23. The core problem with the district court's analysis, however, does not involve whether deliberate indifference is a "high bar" or a low one. The court's mistake was in importing the substantive law of the Eighth Amendment into an ADA claim simply because they both have the same mens rea standard.

Defendant's citation *Csutoras v. Paradise High School* can illustrate the problem. 12 F.4th 960 (9th Cir. 2021). Defendant appropriately cites *Csutoras* as to the meaning of deliberate indifference even though the case involves a school failing to protect students from harassment. Ans. Br. 23. But imagine that Defendant cited the opinion's statement that a plaintiff can establish "deliberate indifference" by showing that a "school's response to … harassment or lack thereof was clearly unreasonable in light of the known circumstances" and argued that it is not liable because it is not a school and Allen not a student. *Csutoras*, 12 F.4th at 966. This would be a non sequitur. *Csutoras*'s statement of the meaning of deliberate indifference is specific to the right at issue. The district court made just this mistake when it wrote that "a mere difference of opinion between an inmate and medical providers regarding the appropriate course of treatment" does not establish

deliberate indifference or that a prison official must know of and disregard an excessive risk to inmate health and safety to be deliberately indifferent. ER-171; Op. Br. 15–16. *Csutoras* concerned whether a school was deliberately indifferent *to* the rights of students to be protected from disability-based harassment; *Toguchi* and *Jackson* concerned whether individual government employees were deliberately indifferent *to* serious medical needs; this case concerns whether a prison was deliberately indifferent *to* Allen's need for accommodations for his mental and physical disabilities. The district court erred in smuggling substantive Eighth Amendment law into a deliberate indifference analysis. As described in Section I, the application of the correct standard requires reversal.

## IV. This Court Should Not Affirm on the Grounds that a Cell in Solitary Confinement Was a Reasonable Accommodation.

Defendant repeatedly argues that it reasonably accommodated Allen by providing him a single-cell in the prison's solitary confinement unit (the IMU). Ans. Br. 5, 9, 14, 16, 17, 19, 20, 25, 26. "Allen's demands for a single-occupancy cell were accommodated," Defendant writes—"they simply were not accommodated to his satisfaction because he was not given a cell *in the general population*." Ans. Br. 20 (emphasis in original). It is true that a public entity does not necessarily have to provide a plaintiff with his requested accommodation if it provides a reasonable alternative. *See Updike v. Multnomah Cnty.*, 870 F.3d 939, 958 (9th Cir. 2017). But there are several independent reasons why this Court should not affirm on the ground

that placing Allen in a single-person cell in solitary confinement qualified as a reasonable accommodation.

First, Defendant forfeited this argument by failing to present it or anything like it below. Its argument to the district court, to quote a heading, was that "DOC Considered and Denied Allen's Repeated Demands for Single Cell Housing." FER-6. DOC never argued that it sent Allen to a single-cell solitary confinement cell to accommodate him but instead was clear that it sent him to the IMU and its single-person cells as punishment. FER-7 ("[Allen] was repeatedly infracted for refusing housing assignments and assigned to the Intensive Management Unit"). While many disability law claims center on the reasonableness of an accommodation, Defendant here never argued that it reasonably accommodated Allen in any respect. The only time Defendant mentioned the phrase "reasonable accommodation" in moving for summary judgment was in writing that Allen sought a "reasonable accommodation" and DOC declined to provide any. FER-7. This was Defendant's defense—that Allen was not entitled to any accommodation and therefore did not receive one.

This Court typically does not consider an issue raised for the first time on appeal. *Bolker v. Comm'r*, 760 F.2d 1039, 1042 (9th Cir. 1985). This Court has "recognized three exceptions to this" rule: 1) an "exceptional" case "in which review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process;" 2) "when a new issue arises while appeal is pending because of a

change in the law;" or 3) "when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Id.* The first two plainly do not apply.

Defendant fails both steps of the third exception. First, whether placing Allen in a solitary confinement cell was a reasonable accommodation for his PTSD is not a purely legal question. *See Wong v. Regents of Univ. of California*, 192 F.3d 807, 818 (9th Cir. 1999) ("Because the issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might allow him to meet the program's standards"). Second, the record was not fully developed. Allen did not know he needed to create a record demonstrating the poor conditions in a solitary confinement cell. Defendant never argued that it was reasonable to place him there as a purported disability accommodation. When "a detailed factual inquiry" is raised on appeal that was never raised below, "there may be facts relevant to the issue which were not developed in the record" and this Court should therefore not consider it for the first time on appeal. *See Bolker*, 760 F.2d at 1042.

Second, the record does not support Defendant's newfound argument that it placed Allen in solitary confinement to accommodate him. Before the district court, Defendant was clear: it "punished Allen with disciplinary infractions and placed him

in administrative segregation or the Intensive Management Unit." ER-160. DOC believed that Allen "did not need ADA accommodations" and told him that he did "not meet the criteria for single cell placement." *Id.* The record contains no support for its new argument on appeal that it placed Allen in a single-unit solitary cell as a disability accommodation. As described in Section I, when Allen alerted Defendant to his need for a disability accommodation, it was obligated to "undertake a fact-specific investigation" of his needs and what could be done, providing a reasonable accommodation. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001). It cannot discharge this duty to accommodate by punishing Allen for unrelated reasons by placing him in solitary confinement and then, years later, retroactively deeming this punishment a disability accommodation.

Finally, even if this Court were to consider the issue anew, it should still not hold that a placement into solitary confinement was a reasonable accommodation. Title II's implementing regulations specifically require prison officials to "ensure that inmates or detainees with disabilities are housed in the most integrated setting appropriate to the needs of the individuals." 28 C.F.R. § 35.152(b). The regulation elaborates in a subsection that prisons "[s]hall not place inmates or detainees with disabilities in inappropriate security classifications because no accessible cells or beds are available." 28 C.F.R. § 35.152(b)(2). When Defendant argues that the prison lacked general population single cells and therefore placement in a solitary

confinement cell was a reasonable disability accommodation, it contravenes the ADA's mandate that people with disabilities must not stay in segregation simply because that is where a prison has available space.

## V. Defendant Does Not Argue that a Wheelchair Is "Medical Treatment" or that it Is Entitled to Sovereign Immunity.

Allen's opening brief read the district court's opinion as invoking the doctrine that the ADA has an atextual exception for claims involving medical treatment, a theory with its origins in the Seventh Circuit's opinion in *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996), and invoked by this Court in *Simmons v. Navajo County,* 609 F.3d 1011 (9th Cir. 2010). Op. Br. 6–12. Allen explained both that this doctrine is misguided and why, regardless, it does not apply to his case. *Id.* Defendant responds by arguing that Allen's "attack upon" *Bryant* and *Simmons* are "irrelevant," arguing for affirmance on other grounds rather than defending the district court's invocation of *Bryant*. Ans. Br. 12. Defendant's failure to contest this issue before this Court leaves it undisputed.[2]

Allen's opening brief also explained that Defendant argued below that it was entitled to sovereign immunity but did so by misstating the applicable legal standard.

[2] Allen's opening brief cited several of this Court's recent dispositions that reject a *Simmons*-style defense in analogous circumstances. Op. Br. 10–11. Defendant distinguishes these cases at length. Ans. Br. 16–18. While some of these distinctions are illusory, this Court need not address the dispositions at all given that Defendant has abandoned the defense.

Op. Br. 16–18. As the district court did not mention the defense, Allen argued, this Court should not address it for the first time on appeal. *Id.* Defendant neither repeats its mistaken argument nor makes a different one. This issue too is therefore not properly before this Court.

## CONCLUSION

This Court should reverse the district court's grant of summary judgment to Defendant and remand to the district court for further proceedings.

Date: August 5, 2026

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033
202-455-4399
sam@rightsbehindbars.org

*Counsel for Plaintiff-Appellant*
*Gregory Allen*

## CERTIFICATE OF COMPLIANCE

This brief contains 4,053 words, including zero words manually counted in any visual images, and excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6). This brief complies with the word limit of Ninth Circuit Rule 32-1.

Date: August 5, 2026

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant Gregory Allen*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system.

Participants in the case who are registered CM/ECF users will be served by the ECF/ACMS system.

Date: August 5, 2026.

*/s/ Samuel Weiss*
Samuel Weiss
Rights Behind Bars
1800 M St. NW Front 1, #33821
Washington, DC 20033

*Counsel for Plaintiff-Appellant Gregory Allen*